Rockingham
No. 80-443

THE STATE OF NEW HAMPSHIRE

v.

MARY S. FECTEAU

November 20, 1981

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the brief and orally), for the State.

*Scammon & Gage*, of Exeter (*Peter A. Meneghin, III*, on the brief and orally), for the defendant.

BOIS, J. The defendant appeals from a conviction for false imprisonment (RSA 633:3) following a jury trial de novo in the superior court. We hold that the Trial Court (*Bean*, J.) erred when it denied the defendant's motions to dismiss for insufficient evidence. We therefore set aside the conviction.

The defendant raises several issues on appeal. She first contends that the court lacked jurisdiction to hear this case because of alleged defects in the issuance of her arrest warrant. Next, she claims that a municipal court judge, who did not preside in this case when it was heard in his court below, was improperly allowed to testify against her. The defendant further challenges the jury instructions, claiming that the judge committed prejudicial error when he explained to the jury that the defendant properly took exceptions to preserve issues for potential appellate review, while the prosecution took none because the State has no right of appeal. Finally, the defendant claims that the trial judge erred in denying her motions to dismiss for insufficient evidence.

In 1978, the defendant was chairman of the board of selectmen for the Town of Epping. For several years, the disappearance of town records and documents posed a widely recognized problem for Epping officials. Town officials and employees testified that in 1978 numerous persons had expressed concern about the security of planning board records located at the town hall. Prior to this time, records regarding a federal civil suit against the Town of Epping had disappeared.

In August 1978, the federal court issued an order, as it had done on several other occasions, directing the town to ensure the security of all records regarding the federal suit, and to make them available for public inspection at the town hall. Town counsel met with selectmen and emphasized the importance of keeping the planning board records secure. Shortly thereafter, the selectmen changed the locks to the town hall conference room, the room where these records and documents were maintained. In addition, the selectmen required that persons removing copies of records sign a register. They prohibited access to the conference room during nonworking hours unless at least two members of the planning board or a selectman were present.

On Sunday, October 22, 1978, the defendant learned that people were inside the town hall. She promptly went to the town hall to investigate this report. Unbeknownst to the defendant, another selectman had earlier permitted Virginia Hatfield (a planning board secretary) and Dorothy Hall (a planning board member) to enter the town hall conference room for the purpose of working on planning board records.

When the defendant confronted Virginia Hatfield and Dorothy Hall in the conference room, a heated discussion ensued, and Mrs. Hall stated that she and Mrs. Hatfield would "take their papers and go home." Because the defendant believed that the women intended to remove official records from the building, she immediately locked the front door from the inside and called the police, who later resolved the situation without making an arrest.

Virginia Hatfield brought a complaint for false imprisonment against the defendant, and her attorney's secretary (a New Hampshire Justice of the Peace) issued a warrant for the defendant's arrest. Following a guilty finding in the Epping Municipal Court, the defendant obtained a trial de novo in superior court. At the superior court trial, the State called the judge of the Epping Municipal Court (who did not sit at the former trial) to testify about previous confrontations, which he had observed, between the defendant and Mrs. Hall. The trial judge permitted this testimony despite the defendant's objection that the witness' judgeship dis-

torted the weight and effect of his testimony and prejudiced the defendant.

At the close of the State's case, as well as at the close of all of the evidence, the defendant filed motions to dismiss the complaint on grounds of insufficient evidence. The court denied these motions. The court submitted the case to the jury, and its instructions included those regarding the respective rights of appeal of the defendant and the State. The jury found the defendant guilty as charged, and the defendant appealed to this court.

■■ Assuming *arguendo* that the defendant's arrest warrant was invalid because it was not issued by a neutral and detached magistrate, we find no merit in the defendant's argument that the unlawful arrest constituted a jurisdictional bar to prosecution. The United States Supreme Court has rejected this argument on numerous occasions. *See, e.g., United States v. Crews,* 445 U.S. 463, 474 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975). In accordance with these decisions, we reaffirm our view that "[a]n illegal arrest, without more, is neither a bar to subsequent prosecution nor a defense to a valid conviction." *State v. Greene,* 120 N.H. 663, 664, 421 A.2d 132, 133 (1980); *see State v. Keating,* 108 N.H. 402, 403–04, 236 A.2d 684, 684–85 (1976). *But see State v. Goff,* 118 N.H. 724, 399 A.2d 562 (1978).

■ We also hold that the trial court properly allowed the municipal court judge to testify as a witness. *See Commonwealth, Dep't of Highways v. Hess,* 420 S.W.2d 660, 661 (Ky. 1967); *LaDow v. State,* 23 Ohio App. 288, 297, 155 N.E. 502, 504 (1925). We emphasize that the judge-witness never presided in this case, and that the trial judge "could . . . find, in its sound exercise of discretion, that the probative value of the [testimony] outweighed the possible prejudice." *State v. Perron,* 118 N.H. 245, 246, 385 A.2d 225, 225 (1978).

■■ The record before us discloses that the defendant objected to the allegedly erroneous instructions but failed to take or save an exception to the court's adverse ruling. We require that contemporaneous objections and exceptions be taken to preserve issues for our consideration. *State v. Sullivan,* 121 N.H. 301, 304, 428 A.2d 1247, 1249–50 (1981); *Martineau v. Perrin,* 119 N.H. 529, 531, 404 A.2d 1100, 1102 (1979). *See also State v. McMillan,* 114 N.H. 569, 572, 324 A.2d 732, 733–34 (1974) (upholding instructions concerning respective rights of appeal of defendant and State).

Having dismissed the defendant's initial contentions, we now address the defendant's claim that the prosecution failed to prove

the essential elements of false imprisonment, and that the trial judge erred in denying the defendant's motions to dismiss for insufficient evidence.

■ In New Hampshire, false imprisonment is a statutory crime. According to RSA 633:3, "[a] person is guilty of a misdemeanor if he knowingly confines another unlawfully . . . so as to interfere substantially with his physical movement." RSA 633:2 defines the phrase "confines another unlawfully" to include "confinement accomplished by force, threat or deception . . . ."

■ We interpret this statutory language to require three essential elements. First, there must be a confinement or detention which restricts another person's free movement. *Accord, People v. Satterthwaite*, 72 Ill. App. 3d 483, 484–85, 391 N.E.2d 162, 163–64 (1979) (construing ILL. ANN. STAT. ch. 38, § 10-3 (Smith-Hurd)); *State v. Pass*, 30 Utah 2d 197, 200, 515 P.2d 612, 613 (1973) (construing UTAH CODE ANN. § 76-5-304). Second, the confinement must be unlawful, *id.*, 515 P.2d at 613, a requirement which is satisfied when the perpetrator acts without legal authority and the victim does not consent. *Accord, People v. Satterthwaite supra.* Finally, consistent with the phrase "knowingly confines another unlawfully," the perpetrator must have knowledge of both the confinement and its unlawfulness. *See* RSA 633:3.

■ In order to prevail in a criminal case, the State must establish guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361 (1970); *see State v. Nelson*, 103 N.H. 478, 489, 175 A.2d 814, 822 (1961), *cert. denied sub nom. Nelson v. New Hampshire*, 369 U.S. 879 (1962). In this case, the record contains sufficient evidence that the defendant confined Mrs. Hatfield and Mrs. Hall in the town hall. Proof of unlawfulness, the second element of false imprisonment, is less clearcut because the defendant, as a selectman, may have had authority to detain the women. *See* RSA 41:58, :59.

■ But even if we were to find that sufficient evidence of unlawfulness existed, the State still cannot prevail because it has clearly failed to provide sufficient evidence of the defendant's criminal state of mind. *See generally* 1 WHARTON'S CRIMINAL LAW § 27, at 134 (Torcia 14th ed. 1978). When the prosecution rested, the record indicated that the defendant locked herself in the town hall with the two women, and immediately called the police. The record further showed that the defendant thought the women were going to remove official records from the town hall. It contained no indication that she knew the confinement was unlawful, or that she

was aware that it was practically certain to cause a prohibited result. *State v. Weitzman*, 121 N.H. 83, 89, 427 A.2d 3, 6–7 (1981); *cf. State v. Koski*, 120 N.H. 112, 114, 411 A.2d 1122, 1123 (1980).

In light of the State's failure to offer sufficient evidence that the defendant knowingly acted unlawfully, we hold that the trial court erred when it denied the defendant's motions to dismiss for insufficient evidence.

*Reversed.*

BATCHELDER, J., did not sit; the others concurred.