Hillsborough
No. 86-507

THE STATE OF NEW HAMPSHIRE

v.

REGINALD GUAY

May 6, 1988

*Stephen E. Merrill,* attorney general (*Steven L. Winer,* assistant attorney general, on the brief and orally), for the State.

*Joanne Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Reginald Guay, was found guilty, after a jury trial, of the armed robbery, RSA 636:1, and kidnapping, RSA 633:1, of Paul Beaulieu. The Superior Court (*Wyman,* J.) sentenced the defendant to two and one-half to five years for the armed robbery conviction and one and one-half to five years for the kidnapping conviction, the sentences to be served consecutively.

The defendant raises three issues on appeal; namely, whether (1) the in-court and out-of-court identifications of the defendant should have been excluded because they were the result of an unnecessarily suggestive procedure; (2) the robbery indictment should have been dismissed after the State's opening statement; and (3) the evidence was insufficient to support the armed robbery conviction. We affirm the decision of the trial court for the reasons stated below.

On July 29, 1985, at approximately 11:30 p.m., the victim, Paul Beaulieu, left his workplace in Nashua and drove north towards Manchester, where he was to meet friends. He was driving his red, "mint-condition," four-door 1978 Chevrolet Nova. While driving on Route 3, Beaulieu picked up two hitchhikers, the defendant and William Maker. The three men engaged in conversation, during which time the two hitchhikers gave Beaulieu what later proved to be false names, and told him they were partying and heading towards Merrimack. Both the defendant and Maker appeared intoxicated, but were not incoherent.

At some point during the trip the defendant asked Beaulieu to stop the car because he felt ill. Beaulieu complied. The defendant then got out of the car and immediately opened the door on the driver's side and started pushing Beaulieu towards the middle of the seat. When the victim resisted, the defendant threatened to stab him with a knife. Although the victim did not see a knife, he believed the threat and handed over the car keys.

The defendant then started driving the car on Route 3 and then on various back roads. Route 3 was well-lit in certain areas, which enabled Beaulieu to observe the defendant. While the defendant

was driving, the victim tried to convince the defendant to pull over and let him drive. At first the defendant agreed to do so, but later reneged.

After approximately twenty-five to thirty minutes, the defendant stopped the car at a store, and Maker left to get some beer. The victim did not attempt to escape because he was unsure of where he was. He did, however, continue to try to convince the defendant to let him drive or to release him. The defendant declined. Beaulieu also offered the defendant his car and portable radio in exchange for his freedom. The defendant again said no.

After Maker returned with the beer, the defendant drove to a gas station in Nashua. The station was well-lit. When the defendant stopped the car at the station the victim tried to jump into the back seat to escape, but the defendant and Maker grabbed his legs. Maker threatened to shoot Beaulieu if he tried to escape again. After this confrontation, Maker left to get some matches. The victim, who had been seated between the defendant and Maker, then moved across the front seat toward the passenger door. The defendant looked at him and said, "Go ahead, try to escape." Beaulieu felt something in his ribs. When he looked down and saw that it was only a set of keys, he opened the door and jumped out. The defendant grabbed at Beaulieu's shirt but Beaulieu managed to escape. Shortly thereafter, Beaulieu arrived at the Nashua Police Station, where he reported his car stolen and gave a description of his assailant to the police.

The defendant and Maker continued driving after Beaulieu's escape. The defendant refused to take Maker home, instead driving to his own house. After the defendant entered his house, Maker left the car, hid by the side of the road and watched the defendant drive by him. The defendant continued to drive around until he was apprehended by the Merrimack police at approximately 2:00 a.m. for DWI and for operating a stolen motor vehicle. Maker, a witness for the State, testified that the defendant had made no effort to return the car to the victim.

Shortly after the defendant was apprehended, Beaulieu accompanied the Nashua police to the location of his car, where he immediately saw and identified the defendant.

The first issue raised by the defendant is whether the out-of-court and subsequent in-court identifications should have been excluded. When the victim identified the defendant, Guay was alone, seated in the back seat of a police cruiser. The defendant argues that this was in effect a one-man show-up, which was not required by emergency circumstances and thus was unnecessarily suggestive

because the police could have used a more reliable procedure for obtaining the identification. The State argues that even if the procedure used was unnecessarily suggestive, the trial court in its pre-trial hearing had carefully considered all the circumstances and found the identification admissible "in light of the appropriate legal standards," and as such "the identification was accurate, reliable, and independent of any suggestive police actions."

After a pre-trial hearing, the Trial Court (*Bean*, J.) found the police conduct to be suggestive. Although the court did not expressly find the police conduct to be impermissibly suggestive, it impliedly so found when it stated that "by clear and convincing evidence . . . the out-of-court identification was [nonetheless] reliable . . . [and] based upon independent observation and not as a result of unnecessarily suggestive actions on the part of the police."

■ The law is well-settled that when unnecessarily suggestive police identification procedures are used, the State must demonstrate by clear and convincing evidence, in light of the totality of the circumstances, that the identification was nonetheless reliable, based on observations uninfluenced by the suggestive procedures used by the police. *See Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *State v. Howe*, 129 N.H. 120, 123, 523 A.2d 94, 96 (1987); *State v. Allard*, 123 N.H. 209, 213, 459 A.2d 259, 262, *cert. denied*, 464 U.S. 933 (1983).

■ The five factors contributing to reliable identification under the totality of the circumstances test are: the opportunity to view the defendant; the witness's degree of attention; the accuracy of any prior description given by the witness; the witness's level of certainty at the time of identification; and the time lapse between the crime and identification. *Biggers, supra* at 199–200; *Howe, supra* at 123, 523 A.2d at 96; *State v. Winders*, 127 N.H. 471, 475, 503 A.2d 798, 802 (1985); *Allard, supra* at 213, 459 A.2d at 262.

The Trial Court (*Bean*, J.) found

"Under the totality of the circumstances . . . the victim . . . had ample opportunity to view the defendant during the 30 to 45 minutes he was sitting between the two individuals. He was apprehensive, but he was also attentive to whatever [the defendant] was doing. His description was accurate and the police officer testified that after the description he observed the defendant and felt the description to be accurate. The level of certainty was without any doubt by the victim and was without any

> hesitation when he first observed the defendant seated in the police car. Confrontation took place within 2 to 3 hours after this experience of the victim, an insignificant lapse of time."

Testimony showed that the victim had an opportunity to view the defendant from various different angles and under numerous lighting conditions. Officer Hefferan of the Nashua Police Department further testified that the description given to the police was accurate, namely, white male, 20 years old, shoulder-length dirty blond hair, 5′8″ to 5′9″, wearing a leather vest and jeans, and that Beaulieu's level of certainty at the time of identification was unequivocal.

■■ "We will not overturn the trial court's finding unless, after reviewing the record, we conclude that it is contrary to the weight of the evidence." *Winders, supra* at 475, 503 A.2d at 800 (citing *State v. Reynolds,* 124 N.H. 428, 434–35, 471 A.2d 1172, 1175 (1984)); *see State v. Duff,* 129 N.H. 731, 736, 532 A.2d 1381, 1384 (1987). A review of the record shows us that the trial court's conclusions were not contrary to the weight of the evidence and thus the out-of-court identification was reliable. We conclude, moreover, that the courtroom identification whose integrity depends on the reliability of the out-of-court identification was also reliable. *See Allard, supra* at 212, 459 A.2d at 262. Thus, we agree with the trial court's findings that the identification was reliable and was based on Beaulieu's independent observations rather than any unnecessarily suggestive actions of the police.

Next the defendant contends that the trial court committed reversible error when it denied his motion to dismiss the armed robbery charge on the ground that the State's opening statement did not address adequately the elements of the crime. However, before deciding the merits of this issue, we will address two procedural matters. The first is the issue of the timeliness of defendant's objection. The record indicates that defense counsel did not object to the State's alleged omission in its opening statement until after the luncheon recess which followed the defendant's own opening statement.

■ As a general rule, "evidence should be objected to when it is offered and before it is admitted, or at the earliest possible opportunity after its objectionable character becomes apparent." 23A C.J.S. *Criminal Law* § 1060, at 4–5. This court has stated, with regard to jury instructions, that an "issue not preserved by a timely objection [or motion] . . . is deemed waived . . . ," *State v. Niquette,*

122 N.H. 870, 873, 451 A.2d 1292, 1294 (1982); and that, with regard to closing arguments, "an objection should be taken at the time the alleged improper statement is made, or within a reasonable time thereafter . . . ," *Bond v. Bean*, 72 N.H. 444, 447, 57 A. 340, 341 (1904); and has indicated, on numerous occasions, that a timely objection is necessary to preserve an issue for appeal, *State v. Fecteau*, 121 N.H. 1003, 1006, 437 A.2d 294, 296 (1981). *See generally State v. Cass*, 121 N.H. 81, 82, 427 A.2d 1, 2 (1981). Our rules of evidence, furthermore, require contemporaneous objections to the admission or exclusion of evidence. N.H. R. Ev. 103(b)(1) & (2). *See also* FED. R. CIV. P. 61.

This timeliness requirement is equally applicable to objections to improper opening statements. Courts have held that a timely objection to allegedly improper opening statements is made either during or at the close of the State's opening statement, depending on the error alleged. *See State v. Robb*, 439 S.W.2d 510, 514 (Mo. 1969) (Objections to State opening must be timely made. Where prosecutor inappropriately referred to evidence, objections to prosecutor's opening statement made at its conclusion were not timely and did not preserve the issue for appeal.); *Pitts v. State*, 431 P.2d 449, 453 (Okla. Crim. App. 1966) (defense must object to alleged improper statements by prosecutor at time they are made).

When there is an alleged failure of the prosecutor to state all the elements of a crime, as is the contention here, as opposed to making an improper statement during the course of its opening, the New Jersey Superior Court Appellate Division in *State v. Portock*, 205 N.J. Super. 499, 508, 501 A.2d 551, 555 (1985), *cert. denied*, 105 N.J. 579, 523 A.2d 208 (1986), in deciding whether the trial court should have allowed the State to reopen after an allegedly incomplete opening statement, noted that a timely motion to dismiss is one made after the State's opening, "but not after the defendant's opening." *See State v. Moody*, 114 N.H. 281, 282, 319 A.2d 105, 106 (1984) (defendant's objection to State's failure to allege all elements of the crime in its opening came immediately after the State's opening).

 Accordingly, we hold that a defendant's objection to an allegedly deficient opening statement—one in which there is an alleged prosecutorial omission—should be made immediately after the State's opening, not after the defendant's opening.

 The second procedural matter is the requirement of specificity of an objection to an opening statement. The record reveals that defendant's belated objection was as follows:

> "Defense counsel moves to dismiss the armed robbery indictment at this time on the grounds that in the prosecutor's opening statement the elements setting forth the armed robbery were not alleged. Furthermore, in the words of the prosecutor, the defendant was joyriding for 45 to 55 minutes and discussed joyriding on the back roads."

An objection to an opening statement on insufficiency grounds must be specific enough not only to allow the prosecution to address the issue raised, but to bring to the court's attention the exact issue in question, thereby allowing the court to properly consider the objection and make a ruling thereon. As the portion of the transcript, reproduced above, indicates, the defendant failed to inform the court as to which element of the offense the State had omitted. *See* N.H. R. Ev. 103(a), (b) (requirement of specific objection). A review of the record also indicates that the State's reference to "joyriding" was not used in such a way as to negate an element of the offense of armed robbery. In the State's opening it said that "this was no mere joyride." Although the issue of the insufficiency of the State's opening statement could be decided on either of the above procedural points, we will, nevertheless, exercise our discretion and address the merits of the defendant's claim, since to do otherwise may result in unnecessary litigation.

The defendant claims that the State's opening statement did not allege the elements of armed robbery. The State argues, however, that after the jury was impanelled and prior to the prosecution's opening statement, the clerk of court read both indictments in their entirety, and that the prosecutor in his opening noted that fact to the jury and further stated that the State had to prove each and every element of the two indictments. The armed robbery indictment states:

> "[I]n the course of committing a theft, to wit: in the course of exercising unauthorized control over a 1978 Chevrolet Nova belonging to Paul M. Beaulieu of Nashua, New Hampshire, with a purpose to deprive the owner thereof, he purposely put Paul M. Beaulieu in fear of immediate use of physical force by threatening to stab him with a knife so that he reasonably appeared to the victim to be armed with a deadly weapon."

The defendant does not contend that the indictment in question fails to charge the crime of armed robbery. The prosecution's reference to the indictment, which was read to the

jury, incorporated the indictment by reference into the prosecutor's opening statement. While the prosecutor's opening statement could have been more artfully presented, we cannot say on these facts that the opening statement did not allege all the elements of the offense in question or that the trial court erred in denying the defendant's motion to dismiss. We must keep in mind that the purpose behind the practice of having the State give an opening statement, and then allowing the defendant an opportunity to request a dismissal after it, is to prevent unmeritorious cases from going forward, not to prevent meritorious cases from doing so.

The last issue raised is whether there was sufficient evidence presented at trial to support the armed robbery conviction. At the close of the evidence, defense counsel moved to dismiss the armed robbery charge and to submit to the jury only the lesser-included offense of unauthorized use of a motor vehicle, RSA 634:3. The court denied the defendant's motion, but did instruct the jury on the lesser-included offense. The defendant alleges error on the ground that the State was required, but failed, to prove one of the elements of armed robbery; namely, that the defendant intended to permanently deprive the victim of his automobile.

The issue before us involves the interplay of three statutes. The first statute, RSA 636:1, I(b), states: "A person commits the offense of robbery if, in the course of committing a theft, he . . . [t]hreatens another with or purposely puts him in fear of immediate use of physical force." The second statute, RSA 637:3, I, defines theft as "obtain[ing] or exercis[ing] unauthorized control over the property of another with a purpose to deprive him thereof." The third statute, RSA 637:2, III(a), defines "purpose to deprive" as "hav[ing] the conscious object . . . [t]o withhold property permanently or for so extended a period or to *use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost.*" (Emphasis added.)

In *State v. Cote*, 126 N.H. 514, 493 A.2d 1170 (1985), we stated that the statutory purpose to deprive requires a state of mind that creates "at the least, a 'substantial risk of loss to the owner' of the stolen property." *Id.* at 520, 493 A.2d at 1174 (citing REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF THE CRIMINAL LAWS § 582:2 comment, at 62 (1969)).

In a sufficiency of the evidence argument, "the defendant has the burden to demonstrate that no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt." *State v. Murray*, 129 N.H.

422

645, 650, 531 A.2d 323, 327 (1987); *accord State v. Meaney*, 129 N.H. 448, 450, 529 A.2d 384, 386 (1987). "The rational trier is, of course, entitled to infer guilt from circumstantial evidence that excludes all other rational conclusions." *Murray, supra* at 650, 531 A.2d at 327; *State v. Danskin*, 122 N.H. 817, 818, 451 A.2d 396, 397 (1982).

In the thirty to forty minutes that Beaulieu was captive in the car, he noticed the defendant drive erratically, cross the center line and alternate driving speeds. Several times the defendant drove close enough to trees and rocks at the side of the road that Beaulieu grabbed the steering wheel to avoid a collision. Beaulieu thought the defendant was going to purposely hit something. Beaulieu testified at trial that he believed the defendant's erratic driving, though in part due to intoxication, was done to scare him.

In this case, the defendant's causing approximately $1600 worth of damage to a ten-year-old Chevrolet is circumstantial evidence from which a jury could reasonably infer that the defendant intended to use the car in such a way as to destroy a substantial portion of its economic value, and thus had the conscious object necessary for the armed robbery charge. Accordingly, the defendant has failed to carry his burden.

*Affirmed.*

All concurred.