# THE STATE OF NEW HAMPSHIRE

### v.

# JAMES WHITTEY

June 7, 1991

*John P. Arnold*, attorney general (*Tina L. Nadeau*, assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant, James Whittey, was convicted of burglary, RSA 635:1, after a second jury trial in the Superior Court (*Manias*, J.), and was sentenced to four to eight years in the State Prison. Prior to the first jury trial, which ended in a mistrial, the defendant moved to suppress evidence of an out-of-court show-up identification during which a witness identified the defendant as the burglar. The trial court denied the defendant's motion to suppress, ruling that, although the identification procedures used were unnecessarily suggestive, the State had proven by clear and convincing evidence that the witness's out-of-court identification was nonetheless reliable. It is from this ruling that the defendant now appeals. For the reasons that follow, we affirm the trial court's ruling.

At approximately 6:30 p.m. on December 20, 1988, fourteen-year-old Claire Cowan surprised a burglar in her home, who was in the process of stealing her mother's purse from the kitchen counter. She ran out the door after him, and when she lost sight of him, she called the police. Officer Scott Rogers of the Concord Police Department arrived at the Cowans' house a couple of minutes later. When Claire first met him outside, he had stopped a group of three or four people on the sidewalk, and he asked her if she could identify any of them as the burglar. She could not. Officer Rogers then asked Claire for a description of the burglar, which he relayed over the police radio. About half an hour later, the police found a man matching this description. During a "drive-by" conducted at 7:10 p.m., Claire was able to identify the man, who was the defendant, James Whittey, as the burglar.

During the suppression hearing, Claire testified that she had seen the burglar for about two to four seconds, at a distance of about six feet, and had been able to observe three quarters of his face. The kitchen, where she saw the man, was well-lit with an overhead light and a light over the kitchen table. In addition, the chandelier in the dining room, which adjoined the kitchen, was on. She stated that her initial reaction to seeing the burglar was one of surprise, and that she focused her attention on his face in an attempt to determine who he was. Claire described the man as a white male between the ages of

twenty and twenty-five, approximately six feet tall, with blonde hair and a pockmarked face, wearing a light brown jacket. The police photograph taken of the defendant upon his arrest shows that he was also wearing a red, hooded sweatshirt underneath a light brown jacket and had a moustache, but that his face was not pockmarked. When the police conducted the drive-by, Claire identified the defendant immediately as the burglar, stating that she was "absolutely positive it was him."

■ On appeal, the defendant argues that the evidence was insufficient to establish the reliability of the identification by the clear and convincing standard required by part I, article 15 of the New Hampshire Constitution and the fourteenth amendment to the United States Constitution. Specifically, the defendant contends that the witness's identification cannot be deemed reliable when she only observed the burglar for two to four seconds, never obtained a full view of his face, and was simply a "startled" teenager, rather than a trained observer with an orientation toward detail. He also asserts that the witness's prior description was inaccurate because there are three discrepancies between her description of the burglar and the defendant's appearance at the time of his arrest. The State, on the other hand, maintains that the out-of-court identification was reliable based on the totality of the circumstances. Because defendant did not rely on any provision of the New Hampshire Constitution in his motion to suppress, thereby preserving a State constitutional claim, *see State v. Westover*, 127 N.H. 130, 131, 497 A.2d 1218, 1219 (1985), we address the issues raised with reference to the federal constitutional principles relied on by our previous out-of-court identification cases.

■ "The law is well-settled that when unnecessarily suggestive police identification procedures are used, the State must demonstrate by clear and convincing evidence, in light of the totality of the circumstances, that the identification was nonetheless reliable, based on observations uninfluenced by the suggestive procedures used by the police." *State v. Guay*, 130 N.H. 413, 417, 543 A.2d 910, 912 (1988). The five factors indicating the reliability of the identification under this totality of the circumstances test are: (1) the witness's opportunity to view the suspect; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the witness's level of certainty at the time of the identification; and (5) the time lapse between the crime and the identification. *Id.* We will not reverse the trial court's ruling unless a review of the record indi-

cates that its conclusions were contrary to the weight of the evidence. *Id.* at 418, 543 A.2d at 913.

> The trial court found that
> "Ms. Cowan had an ample opportunity to view the suspect. At that time, she looked closely at his face and overall appearance. Ms. Cowan gave an accurate general description which matched the defendant's appearance. Ms. Cowan refused to identify any of the individuals who had been detained outside her home but was positive in her identification of the defendant. Finally, the time lapse between Ms. Cowan's initial encounter with the suspect and her identification of the defendant was very short, only 30 to 45 minutes had passed."

The defendant concedes that the short time lapse between the occurrence of the burglary and the witness's identification of the defendant as the burglar strengthens the reliability of the identification. Therefore, we focus our inquiry upon whether the evidence in the record is sufficient to support the trial court's findings as to the remaining four factors of the totality of the circumstances test.

We begin with the "opportunity to view" factor. When the witness observed the burglar in the kitchen of her home, she was only six feet away from him, and the area was well-lit. *See State v. Howe,* 129 N.H. 120, 124, 523 A.2d 94, 97 (1987) (discussing lighting conditions as a factor to be considered in determining the reliability of an identification). Although she was only able to see the suspect for a relatively short period of time, her view was unobstructed, and the evidence shows that she was able to obtain a good look at most of his face. The witness's ability to positively identify one person, the defendant, as the burglar, and the fact that she did not identify anyone else as the burglar from the group of people Officer Rogers stopped outside her house, indicates that she had a sufficient opportunity to observe the suspect so as to be able to distinguish him from other young males. The cases cited by the defendant in support of his argument that the witness's identification is not reliable, because she observed the suspect for only a few seconds and because she never obtained a full view of his face, are distinguishable from the present case on this basis. *See Marsden v. Moore,* 847 F.2d 1536, 1545–46 (11th Cir.), *cert. denied,* 488 U.S. 983 (1988) (witness did not have an adequate opportunity to view the suspect where she saw at most a profile of the suspect and was unable to identify him from a photographic array containing photographs of only him); *Thigpen v. Cory,*

804 F.2d 893, 896–97 (6th Cir. 1986), *cert. denied*, 488 U.S. 918 (1987) (witness's identification of the suspect was not reliable where the suspect was behind the witness during most of the five-minute robbery, the witness turned to look at the suspect briefly only once, and the witness failed to identify the suspect in the first line-up); *Swicegood v. State of Ala.*, 577 F.2d 1322, 1325–29 (5th Cir. 1978) (witness's identification of the suspect was not reliable where he was able to see the suspect for no more than two seconds and identified another individual as the suspect at the first line-up before identifying the suspect at the second line-up). Thus, we cannot say that the trial court's finding that the witness had an "ample" opportunity to view the suspect was contrary to the weight of the evidence.

■ Similarly, we hold that the trial court's findings as to the remaining factors are also supported by the evidence. The witness paid close attention to the burglar. She was not frightened by him, but instead focused upon his face in an attempt to determine who he was. *Cf. State v. LeClair*, 118 N.H. 214, 220, 385 A.2d 831, 834 (1978) (implying that the fact that the witness was "scared" and acted "like he was in shock" at the time of the robbery would have lessened the degree of attention he paid to the features of the suspect). Her identification of the defendant should not be discounted simply because she is not a police officer specially trained to observe details. Further, her description of the burglar, although lacking in some details, substantially agreed with the defendant's appearance. *See State v. Heald*, 120 N.H. 319, 323, 414 A.2d 1288, 1290 (1980) (holding that the descriptions given by three witnesses were sufficiently accurate, despite the fact that they varied in detail); *see also State v. Allard*, 123 N.H. 209, 214, 459 A.2d 259, 262, *cert. denied*, 464 U.S. 933 (1983) (upholding the trial court's finding that the identification was reliable where "[t]he inconsistency between the defendant's appearance and the victim's description of him was limited to the absence of a moustache and a discrepancy in hair length"). *But cf. State v. LeClair*, 118 N.H. at 220, 385 A.2d at 834 (stating that the accuracy of the victim's description was diminished by his failure to mention the defendant's moustache, "of which there was strong evidence"). Finally, when the witness identified the defendant, she was "absolutely positive" that he was the burglar.

■ In conclusion, we hold that the trial court correctly determined that the State met its burden of proving by clear and convincing evidence that the witness's identification of the defendant was reliable under the totality of the circumstances. Accordingly, we

affirm its decision denying the defendant's motion to suppress evidence of the out-of-court identification.

*Affirmed.*

All concurred.