USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1711

 RICHARD PROVENCHER,

 Plaintiff, Appellee,

 v.

 CVS PHARMACY, DIVISION OF MELVILLE CORPORATION, ET AL.,

 Defendants, Appellants.

No. 97-1732

 RICHARD PROVENCHER,

 Plaintiff, Appellant,

 v.

 CVS PHARMACY, DIVISION OF MELVILLE CORPORATION, ET AL.,

 Defendants, Appellees.

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Joseph A. DiClerico, U.S. District Judge]

 Before

 Lynch, Circuit Judge,
 Coffin and Cyr, Senior Circuit Judges.
 
 

 Mark G. Furey for CVS Pharmacy, et al.
 Andru H. Volinsky for Provencher.

May 26, 1998

 COFFIN, Senior Circuit Judge. These appeals arise out of
Richard Provencher's federal claims against CVS Pharmacy (CVS) of
sexual harassment and retaliation and Deborah Banaian's state
counterclaims for false arrest and imprisonment, intentional
infliction of emotional distress, and defamation. A jury found CVS
retaliated against Provencher for filing a sexual harassment claim,
and declined to find defamation. CVS appeals the jury instruction
on retaliation and the punitive damages award. Banaian appeals the
dismissal of her first two counterclaims; in turn, Provencher
appeals the dismissal of his sexual harassment claim. We affirm
the district court in all respects.
 I. FACTUAL AND PROCEDURAL OVERVIEW
 Provencher was employed by CVS from July 1988 until his
termination in May 1995. He worked as Banaian's assistant manager
from late 1989 until April 1992, when he was promoted to manager of
another CVS store. At the time CVS fired him, he managed a CVS
store in Manchester, New Hampshire. 
 The core of Provencher's case was that he was sexually
harassed by Banaian because he was a gay man and ultimately fired
by CVS because he reported the harassment. Provencher alleged that
Randy Ellis, his supervisor in 1989, directed Banaian to harass
him, with the goal of leading him to resign. Rather than quit, 
Provencher reported the harassment to company officials, who took
no remedial action. In 1995, he filed a sexual harassment
complaint with the New Hampshire Commission for Human Rights. 
Around that same period, he served on a jury, which he reflected on
his CVS time sheet as a forty hour work week of jury service. 
Shortly thereafter, he was terminated by CVS, allegedly for
falsifying payroll records during this period. Provencher
claimed, and the jury agreed, that he was discharged in retaliation
for filing a sexual harassment claim.
 The central tenets of the defense were: Ellis did not know
Provencher was gay until late 1993 and therefore could not have
acted as alleged; CVS did not pursue remedial action because
Provencher specifically directed it not to do so; and, finally,
Provencher was terminated for violating company policy. Banaian's
counterclaims arise from her allegation that Provencher improperly
had police remove her from the store he managed, thereby
embarrassing and humiliating her in front of co-workers.
 As no insufficiency of the evidence claim has been raised, we
are not concerned with the adequacy of the jury's findings of fact,
but rather with the legal decisions made by the judge. We address
first CVS' contentions that the district court erred in the nature
of the instructions given and the damages imposed. We then examine
the dismissal of the counterclaims of intentional infliction of
emotional distress and false arrest and imprisonment. Finally, we
turn to Provencher's sexual harassment hostile work environment
claim to review its dismissal on summary judgment.
 II. THE JURY INSTRUCTIONS
 The parties agree that at all times during the litigation CVS
maintained that Provencher was fired for falsifying payroll
records, and Provencher alleged the termination amounted to
retaliatory discharge. CVS argues on appeal that the jury could
have found that both reasons contributed to the termination, and
it was error to use the language "played a part" and "a motivating
factor" in the retaliation instruction. According to CVS, where a
discriminatory motive can be one of multiple factors resulting in
discharge, the jury should be instructed that liability attaches
only where the impermissible motive is a "determinative,"
"dominant" or "substantial" factor in the employer's decision. 
 Before examining the adequacy of the instruction, we consider
whether, as Provencher claims, CVS failed to raise its challenge
below. If it did not object, we review for plain error. SeeCambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 767 (1st Cir.
1996). Plain error applies only where the error results in a clear
miscarriage of justice or seriously affects the fairness, integrity
or public reputation of the proceedings. See id. The record shows
that CVS objected generally to the instruction given, and
specifically requested the court to describe the prohibited
motivation as "substantial," "principal," "dominant," or some other
language conveying that the jury could not find liability if the
discriminatory motive was de minimus. While better practice would
have been to object to the specific language it now contests --
"played a part" and "a motivating factor" -- CVS' objection did go
to the heart of its current argument, namely, that the jury might
believe it could impose liability even where the discriminatory
motive was small and the permissible motive large. 
 Finding therefore that CVS sufficiently raised the issue
below, we examine the jury instructions de novo to determine if,
taken as a whole, they confused or misled the jury on the
applicable law. See Tatro v. Kervin, 41 F.3d 9, 13 (1st Cir.
1994). We will not reverse a judgment if we determine that the
instruction, examined in this light, is harmless. See Davet v.
Maccarone, 973 F.2d 22, 26 (1st Cir. 1992).
 Because we must examine the jury instruction on retaliation as
a whole, we repeat in full that portion concerning causation:
 [U]nder Title VII, it is unlawful for an employer to
 discriminate against any employee because that employee
 has opposed what he or she believed to have been sex
 discrimination by an employer, or because the employee
 filed a charge of sex discrimination. . . .
 . . . . 
 It is not necessary for Mr. Provencher to prove that a
 retaliatory motive was the sole motivation of, or even a
 primary motivation for, the defendant's decision to
 terminate him. The plaintiff need only prove that it
 played a part in the decision even though other factors
 may have motivated the defendant. Once Mr. Provencher
 shows that a retaliatory motive was a motivating factor
 in the defendant's decision, it is the defendant's burden
 to articulate a legitimate, nonretaliatory reason for its
 decision to terminate him. If the defendant does so, Mr.
 Provencher must prove by a preponderance of the evidence
 that the proffered legitimate reason is in fact a pretext
 and that retaliation was a motivating factor in the
 defendant's decision. Mr. Provencher retains the
 ultimate burden of persuading you by a preponderance of
 the evidence that he was retaliated against as he claims.
 Mr. Provencher claims that the defendant's reasons for
 terminating him are not the true reasons why he was
 terminated, that such reasons are unworthy of belief, and
 that the true reason for his termination was that he
 opposed an employment practice or practices he reasonably
 believed to have been sexually discriminatory, and/or
 that he filed a charge of employment discrimination with
 the commission. When you consider Mr. Provencher's
 evidence that the reason advanced by the defendant is a
 pretext, keep in mind that the relevant question is
 whether or not the defendant's reason was the real reason
 for its actions. . . . An employer is entitled to make
 an employment decision for a good reason, a bad reason,
 or for no reason at all, so long as the decision is not
 motivated by unlawful retaliation. However, you may
 consider whether the defendant's reason is merely a
 cover-up for unlawful retaliation.

 In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and
again in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248
(1981) (to which we refer generally as McDonnell Douglas/Burdine),
the Supreme Court set forth the standard to be applied in cases
where either a legitimate or an illegitimate motive applies. 
Although appellants argue for some adjusted standard, they offer no
supporting authority for this proposition. As both parties
consistently argued at trial that the jury had one of two factual
versions to believe -- fabrication violative of company policy or
retaliation -- we apply the McDonnell Douglas/Burdine standard to
this case.
 The plaintiff must first prove, by a preponderance of the
evidence, a prima facie case of retaliation. See Burdine, 450 U.S.
at 253 (defining the standard in a sex discrimination case). If
the plaintiff succeeds, the defendant has a burden of production to
articulate a legitimate, non-discriminatory reason for its
challenged actions. See id. at 254-55. Then, by a preponderance
of the evidence, the plaintiff must show that the proffered reason
is pretextual. See id. at 256. At all times, however, the
plaintiff retains the ultimate burden to show that he has been the
victim of intentional discrimination. See St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 507 (1993) (quoting Burdine, 450 U.S. at 253). 
 In this case, the district court accurately stated that, in
order to impose liability, the jury had to find that the adverse
action was taken because Provencher filed a sex discrimination
charge. The court correctly defined the applicable standard of
proof, explained that the jury must determine whether CVS'
proffered reason was pretextual, and instructed that liability
could be imposed if it determined that retaliation was the "real"
and "true" reason for the employment decision. 
 The district court, however, also used the problematic
language, "a motivating factor" and "played a part," instead of
making it clear that liability should be imposed only if
discrimination was the determinative factor. See Kelley v.
Airborne Freight Corp., No. 96-2057, 1998 WL 150958, at *12 (1st
Cir. Apr. 7, 1998). But this is not dispositive. In Brown v.
Trustees of Boston Univ., 891 F.2d 337, 353 (1st Cir. 1989), the
court upheld an instruction, given in a McDonnell Douglas/Burdinediscrimination case, stating, amid otherwise appropriate language, 
 [The] universit[y] ha[s] the right to exercise
 independent judgment in choosing faculty and its decision
 must be respected unless tainted by . . . illegal reasons
 cited by the plaintiff. . . . The university . . . can
 make any kind of mistake except a decision that is
 tainted by sex discrimination or retaliation . . . and
 your disagreement in general terms is not a basis for a
 finding for the plaintiff unless you find that the
 decision was effectively tainted by . . . illegal
 considerations.

Acknowledging that "taint" indicated an incorrect standard, the
court found that, given the instructions as a whole, its use did
not confuse the jury. See id. at 354 (explaining, "[t]he 'taint'
remarks were . . . sandwiched between several statements which
accurately defined the meaning of the words 'because of' . . . and
several statements that [the impermissible motive] must be the
'true' or 'real' reason for discrimination"). 
 Similarly, the district court in this case instructed the jury
to find the "true" or "real" reasons for the termination, and
clearly placed the burden upon Provencher to prove that he was
fired because he filed a sexual harassment claim. We think it
clear to the jury, given the instructions as a whole and the
argument at trial, that liability could exist only if the jury
credited Provencher's position that retaliation was the reason
behind his discharge, but not if retaliation was a mere factor
among many. 
 III. THE PUNITIVE DAMAGES AWARD
 We review the district court's award of punitive damages de
novo, as we review for legal error. See Compagnie De Reassurance
D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 71
(1st Cir. 1995). The jury awarded Provencher $8,000 in punitive
damages for the retaliation, but awarded no compensatory damages. 
Based on the jury's finding of liability, the district court
awarded Provencher back pay of $8,423 for 1995 and $1,201 for 1996,
with interest, and front pay of $141,221; it then entered judgment
for these amounts and for $8,000 punitive damages in accordance
with the jury's verdict. 
 CVS appeals the punitive damages award, relying on Kerr-Selgasv. American Airlines, Inc., 69 F.3d 1205 (1st Cir. 1995). There,
the plaintiff received compensatory damages on her state law claim
but not on her federal claim, and was awarded punitive damages on
the federal claim alone. See id. at 1214. We held that, under 
1981a, punitive damages could not be awarded in the absence of
compensatory or nominal damages. See id. at 1215.
 This general proposition does not resolve the issue on appeal,
however, because Kerr-Selgas is distinguishable from the present
case on a critical fact -- the award of back pay. The district
court based its punitive damage award to Provencher on its
concomitant award of back pay. By contrast, the punitive damages
decision Kerr-Selgas did not rest in any way on the issuance of
back pay or any other remedy which was compensatory in function. 
This is a decisive difference.
 The Civil Rights Act of 1991 (the Act) made available
compensatory and punitive damages in Title VII cases. See 42
U.S.C. 1981a. The Supreme Court characterized this as a marked
change in the conception of the injury redressable by Title VII. 
See United States v. Burke, 112 S. Ct. 1867, 1874 n.12 (1992). 
Subsection (b) of the Act provides that a punitive damages award is
proper in a case where the plaintiff is injured and the
discriminatory act is perpetrated with malice or reckless
indifference. The Act, however, does not limit an award of
punitive damages to cases in which compensatory relief is given.
 In Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344,
1352 (7th Cir. 1995), the Seventh Circuit awarded the plaintiff
punitive damages and back pay, in the absence of a compensatory
damages award, reasoning that no federal law placed restrictions on
such an award and common law restrictions were inapplicable. The
Seventh Circuit first distinguished the different approaches to
back pay under common law and under Title VII. Under common law,
upon which Kerr-Selgas relied, punitive damages are prohibited in
the absence of compensatory damages, but the latter include back
pay. See id. By contrast, compensatory damages under 1981a omit
back pay. See id. This omission occurred to prevent double
recovery, as Title VII already provided for back pay; the exclusion
was not the result of viewing a back pay award as fundamentally
distinct from compensatory damages. See id. (citing Landgraf v.
USI Film Prod., 511 U.S. 244, 253 (1994)). The Seventh Circuit
then considered the essential nature of back pay. Traditionally
viewed as an equitable remedy imposed by the judge, back pay
reflects an injury of lost wages to the plaintiff. See Landgraf,
511 U.S. at 252-53. As such, it is a "'makewhole' remedy that
resembles compensatory damages in some respects" and is "the most
obvious economic damage in a wrongful discharge case." Id.(citations omitted). The Seventh Circuit concluded that, because
Title VII placed no prohibition upon punitive damages in the
absence of compensatory damages, and because, in redressing an
injury suffered by the plaintiff, back pay awards serve a similar
purpose as compensatory damages awards, a punitive damages award
was proper. See Hennessy, 69 F.3d at 1352. We agree with the
Seventh Circuit's thoughtful analysis.
 Here, too, the district court's award to Provencher of back
pay was based on injury he suffered as a result of retaliatory
discharge by CVS. We see no reason to allow punitive damages only
where the jury enters an award for compensatory damages and not
where the judge enters an award for back pay, given that injury to
the plaintiff is redressed in both instances. We therefore uphold
the punitive damages award.
 IV. THE COUNTERCLAIMS
 In order to review adequately the dismissal of the false
arrest and imprisonment, and the intentional infliction of
emotional distress claims, we review briefly the evidence presented
by Banaian. In 1994 and 1995, Banaian shopped on occasion at the
Manchester CVS store managed by Provencher because it was close to
her house. On March 12, 1995, she was shopping there, without
addressing or looking at Provencher, when he swore at her, refused
to allow her to retrieve her prescription, and then called the
police to remove her from the store. Two officers arrived and when
Provencher (incorrectly) told them that Banaian was barred from his
store, they asked her to leave, which she did after deciding that
any resistance would be futile. On the basis of this incident, she
brought claims of false arrest and imprisonment, defamation and
intentional infliction of emotional distress against Provencher. 
At the close of the case, the district court dismissed the false
arrest and imprisonment claim, and directed Banaian to elect
between her intentional infliction of emotional distress and
defamation claims, allowing her to proceed upon only one of these
theories. Banaian now appeals the forced election and consequent
dismissal of the intentional infliction of emotional distress claim
and the dismissal of the false arrest and imprisonment claim.
 False imprisonment, also referred to as false arrest under New
Hampshire law, Hickox v. J.B. Morin Agency, Inc., 110 N.H. 438,
441, 272 A.2d 321, 323 (1970), is defined as "the knowing
confinement of another unlawfully . . . so as to interfere
substantially with his physical movement." State v. Fecteau, 121
N.H. 1003, 1007, 437 A.2d 294, 296 (1981) (citations omitted). 
Banaian concedes that the police simply asked her to leave, without
threatening arrest, and she complied, without any verbal or
physical resistance. We therefore agree with the district court
that Banaian presented insufficient evidence of unlawful restraint
to proceed on her false arrest and imprisonment claim.
 In addition, we find that the intentional infliction of
emotional distress claim, set forth in the counterclaim as resting
upon statements supporting defamation and "conduct . . . in falsely
arresting and imprisoning" Banaian, properly did not proceed before
the jury. In the absence of the dismissed false arrest and
imprisonment claim, the remaining allegations were identical to
those supporting defamation. As such, the standard articulated in
DeMeo v. Goodall, 640 F. Supp. 1115, 1116 (D. N.H. 1986), applies,
namely, "New Hampshire law does not recognize a cause of action for
wrongful infliction of emotional distress where the factual
predicate sounds in defamation."
 V. THE SEXUAL HARASSMENT CLAIM
 Provencher's claim of sexual harassment was premised on a
hostile work environment theory covering his employment as
Banaian's assistant manager, her contact with him after he became
manager of other CVS branches, and CVS' failure to address his
sexual harassment complaints. At the close of plaintiff's case,
the district court granted defendant's motion for judgment as a
matter of law, dismissing the claim on statute of limitations
grounds and rejecting Provencher's argument that otherwise time-
barred acts were rendered timely under a continuing violation
theory of sexual harassment. We review this decision de novo. SeeSchultz v. Rhode Island Hosp. Trust Nat. Bank, N.A., 94 F.3d 721,
726 (1st Cir. 1996). We will reverse if we determine that a
reasonable jury could have found in his favor. See id. 
 Sexual harassment is a form of gender discrimination
prohibited by Title VII of the Civil Rights Act of 1964. 42 U.S.C.
 2000e-2(a)(1) (prohibiting an employer from failing or refusing
to hire, discharging, or otherwise discriminating against any
individual on compensation, terms, conditions, or privileges of
employment, because of the employee's sex); see Meritor Sav. Bank,
FSB v. Vinson, 477 U.S. 57, 65-67 (1986) (holding that a claim of
hostile work environment sexual harassment is a form of sexual
discrimination actionable under Title VII). A plaintiff can
prevail on a hostile work environment sexual harassment claim only
if he establishes that the harassment was sufficiently severe or
pervasive to alter the conditions of employment and create a
hostile work environment. See Harris v. Forklift Sys., Inc., 510
U.S. 17, 21 (1993).
 To assess the dismissal of Provencher's hostile work
environment claim, we review briefly his evidence of sexual
harassment. In 1989, his district manager suggested he receive
counseling for his homosexuality and then transferred him to work
as Banaian's assistant manager; from this time until April 1992,
Banaian called him "fag" and "queer," said she would make him "a
real man," fondled herself and disrobed in his presence, and
touched his genital area, among other inappropriate conduct. Also
during this period, he was denied a pay raise. Sometime in late
1992 or early 1993, after he no longer worked for Banaian, she
telephoned him, saying that she missed him and had no one with whom
she could play or "change clothes." In late 1993, he took a
stress-related leave of absence, resulting in large part from
Banaian's conduct. In 1994, Banaian began shopping at the
Manchester store he managed, and toward the end of the year, came
in often, on occasion up to three times a day. In March 1995,
Provencher received a telephone call at work from someone he
suspected to be Banaian's husband, threatening to spill his "AIDS
blood" all over the parking lot. Two days later, Banaian came to
his store and, after she refused to leave, he called the police,
who escorted her from the store. Finally, over the course of his
employment with CVS and as early as 1992, Provencher reported the
conduct of Banaian and Ellis to appropriate CVS personnel, but the
company did not investigate and took no remedial action. These
facts, taken together, form the basis of Provencher's claim that he
was subjected to a hostile work environment.
 Title VII requires that an employment discrimination charge
that is first filed with the appropriate state agency, as here, be
filed with the Equal Employment Opportunity Commission within 300
days of the alleged discrimination. See 42 U.S.C. 2000e-5(e). 
The parties agree that, because Provencher did not file until
January 11, 1995, acts pre-dating March 18, 1994, are outside the
standard statute of limitations period. Provencher argues,
however, that he may reach back to include these otherwise untimely
acts in his charge because he was subjected to a "continuing
violation" of sexual harassment. 
 The continuing violation doctrine creates an equitable
exception to the 300-day limitation when the unlawful behavior is
deemed ongoing. See, e.g., Lawton v. State Mut. Life Assurance Co.
of Am., 101 F.3d 218, 221 (1st Cir. 1996); Sabree v. United Bhd. of
Carpenters and Joiners Local No. 33, 921 F.2d 396, 400-02 (1st Cir.
1990); Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990). A
continuing violation allows a plaintiff not only to allege
otherwise time-barred acts, but more concretely, to receive
damages, such as back pay, based on and reaching back to those
acts. See DeNovellis v. Shalala, 124 F.3d 298, 307-08 (1st Cir.
1997) (citations omitted). 
 Continuing violations may be serial or systemic. See Pilgrimv. Trustees of Tufts College, 118 F.3d 864, 869 (1st Cir. 1997). 
Provencher argues that his claim could fall in either category. We
think not. "A systemic violation has its roots in a discriminatory
policy or practice; so long as the policy or practice itself
continues into the limitations period, a challenger may be deemed
to have filed a timely complaint." Sabree, 921 F.2d at 400 n.7
(citing Jensen, 912 F.2d at 523). This type of claim requires no
identifiable act of discrimination in the limitations period,
Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994), and refers
to general practices or policies, such as hiring, promotion,
training and compensation. See, e.g., Mack v. Great Atl. & Pac.
Tea Co., 871 F.2d 179, 183 (1st Cir. 1989) (alleging a
discriminatory promotional system); Rich v. Martin Marietta, 522
F.2d 333, 348 (10th Cir. 1975) (entire promotional system
challenged as resulting in plaintiffs' staying in lower echelons
interminably); Barbara Lindemann & Paul Grossman, Employment
Discrimination Law 1355-59 (3d ed. 1996). 
 In Muniz-Cabrero, we found that the plaintiff's systemic
continuing violation 1983 claim for discrimination based on
political affiliation failed because the plaintiff did not produce
comparative evidence indicating that he was treated differently
from persons in other political groups. 23 F.3d at 611. As in
Muniz-Cabrero, Provencher's claim essentially centers on CVS'
discriminatory behavior toward him, with no comparative evidence of
a policy or practice by CVS that results in discrimination against
gay men generally. Because evidence of verbal and physical
harassment, overall decreased salary, and the company's failure to
remedy indicate acts intended to harm and humiliate Provencher
only, and do not show a policy or practice by the company, see id.,
his claim is most appropriately framed as a serial violation.
 A serial violation occurs where a chain of similar
discriminatory acts emanating from the same discriminatory animus
exists and where there has been some violation within the statute
of limitations period that anchors the earlier claims. SeeDeNovellis, 124 F.3d at 307. Discrimination cases may involve acts
that amount to unlawful discrimination upon their repetition or
escalation. See, e.g., Galloway v. General Motors Serv. Parts
Operations, 78 F.3d 1164, 1166 (7th Cir. 1996) ("In its early
stages [acts] may not be diagnosable as sex discrimination . . . ,
or may not cause sufficient distress . . ., or may not have gone on
long enough to charge the employer with knowledge and a negligent
failure to take effective remedial measures."). It therefore makes
most sense to view the anchor violation requirement as demanding
that the plaintiff prove a timely act forming part of and exposing
a pattern of actionable sexual harassment. Merely residual effects
of past discriminatory conduct, however, are not themselves acts of
discrimination and therefore will not satisfy the anchor violation
requirement. See DeNovellis, 124 F.3d at 309. 
 Even where a plaintiff alleges a violation within the
appropriate statute of limitations period, the continuing violation
claim will fail if the plaintiff was or should have been aware that
he was being unlawfully discriminated against while the earlier
acts, now untimely, were taking place. See Sabree, 921 F.2d at
401-02. We begin our analysis here, as Provencher has failed to
meet this critical notice standard.
 In Sabree, we rejected the plaintiff's continuing violation
claim because the plaintiff admitted that he believed, at every
turn, that he was being discriminated against. We reasoned that a
knowing plaintiff has an obligation to file promptly or lose his
claim: "[t]his can be distinguished from a plaintiff who is unable
to appreciate that he is being discriminated against until he has
lived through a series of acts and is thereby able to perceive the
overall discriminatory pattern." Id.; see also Jensen, 912 F.2d at
522 ("What matters is whether, when and to what extent the
plaintiff was on inquiry notice."); Rush v. Scott Specialty Gases,
Inc., 113 F.3d 476, 481-82 (3d Cir. 1997) (failure to claim sexual
harassment earlier does not destroy the plaintiff's continuing
violation claim because the evidence shows that the harassment
intensified and plaintiff did not realize until later the severity
of the sexual harassment). 
 This revelatory standard reflects the rationale of the
continuing violation doctrine. "[T]he purpose . . . is to permit
the inclusion of acts whose character as discriminatory acts was
not apparent at the time they occurred." Speer v. Rand McNally &
Co., 123 F.3d 658, 663 (7th Cir. 1997) (quoting Doe v. R. R.
Donnelley & Sons Co., 42 F.3d 439, 446 (7th Cir. 1994)); see alsoGalloway, 78 F.3d at 1166 (plaintiffs must be encouraged to
commence litigation when they become aware of conduct that would
support a viable claim without forcing them to do so prematurely);
West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)
(explaining that exceptions to the standard filing time serve to
accommodate indeterminate situations that cannot be measured in
full as they occur). As Provencher admits that he knew he was
being harassed long before he brought his sexual harassment suit,
and certainly had this knowledge before the statute of limitations
period had run, his continuing violation claim cannot stand.
 It also fails because Provencher has not demonstrated that the
timely acts are linked to the untimely acts by similarity,
repetition or continuity. See Galloway, 78 F.3d at 1166 ("Acts of
sexual harassment so discrete in time or circumstances that they do
not reinforce each other cannot reasonably be linked together into
a single chain, a single course of conduct, to defeat the statute
of limitations.") Where these characteristics are not met, the
alleged anchor violation cannot serve as a "continuation" of the
past allegedly discriminatory behavior. See, e.g., Lawton, 101
F.3d at 221 (firing insufficient to meet timely violation
requirement of a serial continuing violation, as "[c]ommon sense
teaches that a plaintiff cannot resuscitate time-barred acts, said
to be discriminatory, by the simple expedient of linking them to a
non-identical, non-discriminatory, non-time-barred act"); Kassayev. Bryant College, 999 F.2d 603, 607 (1st Cir. 1993) (the sole
timely act, a request that plaintiff vacate his office after his
contract expired, was not unreasonable on its face given the need
to accommodate other faculty members, and it amounted to a mere
effect of alleged past discrimination, namely denial of tenure);
Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir.
1993) (plaintiff's observance of one act of sexual harassment and
hearing about another such incident one year after the alleged
harassment she personally experienced had ceased were incidents too
sporadic and removed from the plaintiff's workplace to support a
continuing violation claim). 
 The untimely acts alleged during Provencher's tenure as
Banaian's assistant manager (ending in April 1992) are extreme in
character, ranging from name calling to physical invasion, and the
other untimely act alleged involved a phone call in which Banaian
told Provencher she missed him and had no one with whom to change
clothes. By contrast, the timely acts involve apparently neutral
behavior (shopping at his store, without inappropriate comment or
movement), failure to remediate by the company, and a bare,
unsupported suspicion (the telephone call he believes was made by
Banaian's husband). The timely allegations therefore are too
separated by character and time to be viewed as a repetition of the
untimely acts. 
 We are left with determining whether the timely allegations by
themselves support a claim for sexual harassment. We find they do
not. Failure by CVS to remediate did not exacerbate the harassment
and, although it constitutes improper behavior that could subject
the company to liability, it is not itself sexual harassment. SeeSpeer, 123 F.3d at 664 (an employer's refusal to take action is not
itself an act of Title VII discrimination); Burrell v. City Univ.
of New York, 1998 WL 89661, *7 (S.D.N.Y. Feb. 26, 1998) (employer's
failure to remedy harassment goes to establish its liability, but
not to establish actionable sexual harassment). Overall reduced
pay is an effect of past discrimination and not itself a
discriminatory act. See Lightfoot v. Union Carbide Corp., 110 F.3d
898, 907 (2d Cir. 1997). The telephone call, by itself and without
supporting evidence linking it to Banaian, is insufficient. And,
while context is relevant to determining hostile work environment
claims, we certainly cannot say that shopping at a store, without
more, is a ground upon which a sexual harassment claim may rest. 
"We accept that many different forms of offensive behavior may be
included within the definition of hostile environment sexual
harassment. . . . However, the overtones of such behavior must be,
at the very least, sex-based, so as to be a recognizable form of
sexual harassment." Morrison v. Carleton Woolen Mills, Inc., 108
F.3d 429, 441 (1st Cir. 1997). Provencher's evidence fails to meet
this threshold.
 VI. CONCLUSION
 For the reasons stated above, we affirm the district court in
all respects.

 Affirmed.