Rockingham
No. 90-399

EDWARD BRODERICK, ADMINISTRATOR OF THE
ESTATES OF FRANCIS W. DEFRANCESCO,
RITA Y. DEFRANCESCO, AND BRIAN S. DEFRANCESCO

v.

IDA WATTS

September 1, 1992

156

*Thomas E. Craig P.A.*, of Manchester (*H. Nina Bernard*, on the brief and orally), for the plaintiff.

*Yakovakis, McDonough & Lindh*, of Manchester (*James Yakovakis* on the brief and orally), for the defendant.

THAYER, J. These wrongful death actions arose from a fire which took the lives of Francis, Rita, and Brian DeFrancesco. The fire occurred in a single family residential house owned by Ida Watts, the defendant, and leased to the decedents. The administrator for the estates of the decedents, Edward Broderick, brought suit in the Superior Court (*O'Neill*, J.), and after a trial, the jury returned a verdict for the defendant. The plaintiff appeals alleging the following: (1) the trial court erred in denying the plaintiff's motion for a directed verdict in favor of Brian DeFrancesco; (2) the trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict and to set aside the verdict as against the weight of the evidence with regard to Brian DeFrancesco; (3) the verdict for the defendant was the product of plain mistake, passion, partiality, or corruption; (4) the trial court's charge to the jury and responses to questions from the jury during their deliberations misled and confused the jury so as to render the verdict erroneous; and (5) the defendant's counsel made insinuations during cross-examination of witnesses for the plaintiff and remarks during closing argument that were improper and constituted reversible error. For the reasons that follow, we affirm.

In August 1985, the DeFrancescos moved into a single family residence in Derry which they leased from the defendant. On the evening of November 2, 1985, the DeFrancesco's had a Halloween party at their home. Several candles were used to provide lighting and effect. Some were on tables and at least one was located in a sconce

attached to a wall. Sometime in the early morning of November 3, a fire erupted. The fire started in the den, which was located at the front left-hand corner of the house on the first floor. Thirteen-year-old Brian DeFrancesco and his friend, Edward Robitaille, were asleep in the living room, which was on the first floor in the front right-hand corner of the house. Brian's parents, Rita and Francis, were also asleep on the first floor, in a bedroom in the rear right-hand corner of the house. According to the fire investigators, the most likely cause of the fire was a candle that was left burning after the party.

Thirteen-year-old Brian DeFrancesco and his parents, Francis and Rita DeFrancesco, lost their lives in the fire. Edward Robitaille was the only person inside the house to survive. Edward Broderick, administrator of the estates of Francis, Rita, and Brian DeFrancesco, brought three actions for wrongful death against their landlord, Ida Watts, on behalf of their estates. The plaintiff claimed that Ida Watts violated her statutory duty of care imposed under RSA 153:10-a, II-a, by failing to properly install and maintain smoke detectors in her rental premises. The defendant denied that she was negligent and raised the issue of comparative negligence on the part of the decedents.

At trial, after the conclusion of the defendant's evidence, the plaintiff moved for a directed verdict in favor of the estate of Brian DeFrancesco. The trial court denied the motion. After closing arguments and the judge's jury charge, the jury was asked to render a special verdict. The special verdict form asked the jury to consider separately each decedent's estate's claim against the defendant. After deliberating, the jury returned three special verdicts, each in favor of the defendant. Subsequent to the trial, the plaintiff filed a motion for judgment notwithstanding the verdict and alternatively to set aside the verdict, both of which the court denied. This appeal followed.

I. *Plaintiff's Motions for Directed Verdict and Judgment Notwithstanding the Verdict*

We first consider whether the trial court erred in refusing to grant the plaintiff's motion for a directed verdict during the trial and post-trial motion for judgment notwithstanding the verdict in favor of the estate of Brian DeFrancesco. Motions for directed verdict and judgment notwithstanding the verdict are essentially the same, though made at different stages of the trial, and they are governed by identical standards. *Amabello v. Colonial Motors*, 117 N.H. 556,

561, 374 A.2d 1182, 1185 (1977). Thus, we will consider the plaintiff's contentions that the trial court erred in denying these motions together. We note that the plaintiff moved for a directed verdict only on behalf of the estate of Brian DeFrancesco. Likewise, in the notice of appeal he asserted that the trial court erred in denying the motion for judgment notwithstanding the verdict only with regard to Brian's estate. Therefore, we limit our review of these issues to the circumstances surrounding Brian's death.

■■ A party is entitled to judgment notwithstanding the verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. *Corliss v. Mary Hitchcock Mem. Hosp.*, 127 N.H. 225, 228, 497 A.2d 1239, 1241 (1985); *Cutter v. Town of Farmington*, 126 N.H. 836, 839–40, 498 A.2d 316, 319 (1985). The court cannot weigh the evidence or inquire into the credibility of the witnesses, and "[i]f the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied." *Cutter*, 126 N.H. at 840, 498 A.2d at 319.

■■ As grounds for both motions the plaintiff contends that the sole reasonable inference to be drawn from the evidence was that the defendant breached her statutory duty under RSA 153:10-a by failing to equip her premises with any smoke detectors, and, alternatively, if she did install a smoke detector, that she failed to properly locate it or to maintain it in a suitable condition. "[A] causal violation of a statutory standard of conduct constitutes legal fault in the same manner as does the causal violation of a common-law standard of due care . . . ." *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 52, 289 A.2d 68, 71 (1972); *see also LaFavor v. Ford*, 135 N.H. 311, 314, 604 A.2d 570, 572 (1992). The statute that the plaintiff claims the defendant failed to abide by provides as follows:

> "Every rental unit as defined in RSA 153:1, IX-a shall be *equipped* with at least one automatic fire warning device. An automatic fire warning device shall be *located* in each hallway or area which is adjacent to a sleeping area. . . . The owner of the rental unit shall be responsible for *maintaining* the automatic fire warning device in a *suitable condition.*"

RSA 153:10-a, II-a (emphasis added). This legislative enactment provides a standard of conduct for landlords, requiring that they equip,

properly locate, and maintain in suitable condition fire warning devices. *See* RESTATEMENT (SECOND) OF TORTS § 288B (effect of legislatively imposed standard of conduct). Efforts that fall short of compliance violate the standard of conduct, regardless of whether they were reasonable. *See LaFavor*, 135 N.H. at 314, 604 A.2d at 572 (violation of statute requiring landlord to maintain porches in structurally sound condition results in legal fault regardless of landlord's efforts to comply); *see also Satterlee v. Orange Glen School Dist.*, 29 Cal. 2d 581, 596, 177 P.2d 279, 287 (1947) (Traynor, J. dissenting) (when legislature mandates compliance, the standard of care is not what the reasonably prudent person would do, but what the legislature has commanded); 3 F. HARPER, F. JAMES & O. GRAY, THE LAW OF TORTS § 17.5, at 612, 612 n.27 (1986) (if statutory standard of conduct is absolute, then reasonable efforts are insufficient to comply).

We first consider whether the defendant violated her statutory duty to equip her rental premises with automatic fire warning devices. At trial, the plaintiff produced evidence tending to show that there were no smoke detectors in the house. Charles Chamberlain, an investigator for the State fire marshal's office, and James Cote, the Chief of the Derry fire department, testified for the plaintiff. Chief Cote testified that he did not observe smoke detectors to be present anywhere in the premises after the fire. He also testified that none of the firefighters under his command reported finding any smoke detectors or the remnants of any such device. Inspector Chamberlain testified that he too did not discover any smoke detectors in the premises. Additionally, he testified that on the morning of the fire he spoke with Ida Watts, who stated that she thought she had given smoke detectors to a previous tenant, but that she did not know whether the tenant had installed the smoke detectors.

The defendant, however, produced contradictory testimony from former tenants. Brandt Wright testified that he installed a smoke detector on the second floor of the premises in 1978 and maintained it while he lived there. Robert Carbonneau, who lived at the premises from July 1983 to October 1984, testified that Ida Watts delivered a second smoke detector to him which he installed downstairs. Mr. Carbonneau stated that he maintained both detectors in working condition during the period of his tenancy. Michael Hills, the tenant who immediately preceded the DeFrancescos, testified that two smoke detectors were present in the premises while he was a tenant. Mr. Hills also testified that during his tenancy he relocated

the downstairs smoke detector to the archway that opened into the living room at the front right-hand corner of the house. This was the room in which Brian and Edward had been sleeping, on the night of the fire. Further, on cross-examination, defendant's counsel elicited testimony from Chief Cote that although he did not observe a smoke detector after the fire, one might have existed in the house before the fire. Like Chief Cote, Inspector Chamberlain also admitted on cross-examination that smoke detectors may have been present before the fire. He further acknowledged that the intense heat accompanying the fire could have melted the smoke detectors if they were composed of mostly plastic and aluminum parts. Viewed in the light most favorable to the nonmoving party, the evidence introduced at trial on the issue of whether smoke detectors were installed was contradictory, and the jury could have reasonably found that the rental premises was equipped with an automatic fire warning device.

We next consider whether the defendant maintained the smoke detectors in a suitable condition. In his brief, the plaintiff impliedly argues that the defendant violated her duty of maintenance because she admitted at trial that she did not *personally* maintain the detectors. The plaintiff misconstrues the statute. The statute requires that the fire warning device be maintained; the identity of the individual who actually performs the physical maintenance is irrelevant to a determination of whether that duty is met. The tenants prior to the DeFrancescos all testified that they performed whatever actions were necessary to maintain the smoke detectors themselves. Thus, the record reasonably supports a finding that the smoke detectors were suitably maintained.

The jury also could have found that the smoke detector was properly located. The statute requires that the fire warning devices "shall be located in each hallway or area which is adjacent to a sleeping area." RSA 153:10-a, II-a. Mr. Hills testified that while he was a tenant he relocated the first floor smoke detector to the archway which opened into the front right-hand corner living room, the room in which Brian DeFrancesco was sleeping on the night of the fire. With regard to Brian's sleeping location on the night of the fire, it could not have been more optimally located.

When viewed in the light most favorable to the nonmoving party, we conclude that the evidence concerning whether the defendant properly installed, located, and maintained smoke detectors is contradictory and permits a reasonable inference in favor of the

defendant. Therefore, we hold that the trial court properly denied the plaintiff's motions for directed verdict and judgment notwithstanding the verdict with regard to the estate of Brian DeFrancesco.

## II. *Plaintiff's Motion to Set Aside the Jury Verdict*

Motions to set aside the verdict are distinguished from motions for judgment notwithstanding the verdict by the grounds upon which they are granted and the relief sought. A motion for judgment notwithstanding the verdict sets forth an issue of law. R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1759, at 101 (Supp. 1992). In contrast, a motion to set aside the verdict sets forth a question of fact. *Id.* With regard to the relief sought, motions to set aside the verdict "seek a trial *de novo* at which the facts related to some or all of the issues may be determined anew." *Id.* § 1753, at 98 (Supp. 1992). Motions for judgment notwithstanding the verdict, if granted, result in a finding that the "trial was adequate but that the . . . record is so clear that the court is justified as a matter of law in entering a different verdict without a new trial." *Id.*

In New Hampshire, two distinct standards exist for determining whether a jury verdict may be set aside. A jury verdict may be set aside if it is conclusively against the weight of the evidence. *Panas v. Harakis & K-Mart Corp.*, 129 N.H. 591, 602–03, 529 A.2d 976, 983 (1987). "'[C]onclusively against the weight of the evidence' should be interpreted to mean that the verdict was one no reasonable jury could return." *Id.* at 603, 529 A.2d at 983. Second, a verdict may be set aside if it is the result of mistake, partiality, or corruption, but such a finding must be based on grounds independent from whether the verdict was conclusively against the weight of the evidence. *Id.*

We first consider the plaintiff's motion to set aside the verdict as conclusively against the weight of the evidence. In his notice of appeal, the plaintiff again contends that the court erred in denying the motion to set aside the verdict as against the weight of the evidence only with regard to the estate of Brian DeFrancesco. Therefore, in deciding this issue, as in the two prior issues, we will only consider the circumstances relating to Brian's death.

The plaintiff argues that although there was some conflicting evidence presented at trial regarding whether a smoke detector might have been present at some point in time, the overwhelming weight of the evidence established that no smoke detectors existed in the house on the night of the fire. We disagree. After closely examin-

ing the record, we hold that based on the testimony of the witnesses there was sufficient evidence produced at trial from which a reasonable jury could find that smoke detectors were present. Additionally, the plaintiff argues that because there was no evidence presented at trial that Brian was in any way negligent, the jury could not reasonably find that the defendant was also not negligent. This argument defies logic. Even assuming that Brian was not contributorily negligent, this determination has no impact upon whether the defendant was negligent. In their special verdict, the jury found that the defendant was not negligent, and we hold that this verdict was not conclusively against the weight of the evidence, and therefore, the defendant is not entitled to a new trial.

 We next address the plaintiff's contention that the verdict should be set aside because it was the product of mistake, partiality, or corruption. As in his argument that the verdict should be set aside as against the weight of the evidence, the plaintiff contends that the verdict was the product of mistake because the overwhelming weight of the evidence establishes that the defendant violated RSA chapter 153. It is apparent from the plaintiff's argument on this issue that he has misread our decision in *Panas*. As we indicated in *Panas*, the decision whether to set aside a verdict for the reasons of mistake, partiality, or corruption, is not based on an inquiry into the weight of the evidence produced at trial. *Id.* at 604, 529 A.2d at 983–84. Rather, the proper inquiry is into the conduct of the jury, separate and apart from its consideration of the weight of the evidence produced at trial. *Id.* Thus, we conclude that the plaintiff has not raised any ground that would permit us to consider whether the jury's verdict was the product of mistake, partiality, or corruption.

III. *Jury Instructions*

 The plaintiff next argues that the trial court's charge to the jury, and denial of seven of the plaintiff's requested jury instructions, misled the jury on vital issues, and thereby constituted undue prejudice. The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them. *Johnston v. Lynch*, 133 N.H. 79, 89, 574 A.2d 934, 940 (1990); *Poulin v. Provost*, 114 N.H. 263, 264, 319 A.2d 296, 297 (1974). A jury charge is sufficient as a matter of law if, "taken as a whole, 'it fairly present[s] the case to the jury in such a manner that no injustice [is] done to the legal rights of the litigants.'" *Rawson v. Bradshaw*, 125 N.H. 94, 100, 480 A.2d 37, 41

(1984) (quoting *Poulin v. Provost*, 114 N.H. at 264, 319 A.2d at 297). "[T]he test for determining whether an erroneous civil jury charge is reversible error is whether the jury *could have been* misled." *Bernier v. Demers*, 121 N.H. 217, 218, 427 A.2d 514, 515 (1981). Of course, "[a]s long as the court adequately states the law that applies to the case, it is not necessary that it use the identical language requested by a party." *Johnston*, 133 N.H. at 89, 574 A.2d at 940.

The first proposed jury instruction that the plaintiff alleges was erroneously denied provided as follows:

> "If you find that the defendant by some act or failure to act violated the provisions of New Hampshire RSA 153—dealing with installation and maintenance of smoke detectors—, and if you find that the violation caused or contributed to cause the injuries and death suffered by decedents, this would amount to legal fault."

This argument is completely without merit because the trial court, in fact, gave this instruction with only slight and inconsequential deviations from the requested language:

> "If you find that the defendant by some act or failure to act violated the provisions of New Hampshire RSA 153, dealing with the installation, *location* and maintenance of smoke detectors, and if you find that the violation caused or contributed to cause the injuries and death*s* suffered by *the* decedents, this would amount to legal fault."

(Emphasis added.) We find it incredible that the plaintiff now argues on appeal that his requested instruction was not given. As for the minor deviations in language, the trial court need not adopt the identical wording of a party's requested instruction as long as the jury is adequately instructed on the law they must apply. *See Johnston*, 133 N.H. at 89, 574 A.2d at 940.

The second instruction that the plaintiff alleges the trial court erred by not giving addressed the assessment of damages and was not related to the issue of whether the defendant's conduct was negligent. That the jury need not calculate damages if they do not find the defendant negligent is axiomatic. On each of the three special verdict forms, the jury indicated that the defendant was not negligent. Thus, even if the trial court erred in not including this instruction, its absence *could not have misled* the jury in their determination that the defendant was not negligent. *See Bernier*, 121 N.H. at 218, 427 A.2d at 515.

The third instruction that the trial court denied purported, at great length, to explain a landlord's common law and statutory duties of maintenance in the operation of leased property and the implied warranty of habitability. In denying this instruction, the court correctly reasoned that the specific language requested did not relate to a landlord's common law or statutory duties of care, but instead to the contractual relationship between landlord and tenant which was not at issue in this case. Moreover, the trial court gave an adequate instruction to the jury concerning the defendant's common law duty with regard to the rental of her property. The plaintiff was not entitled to the exact wording that he requested. *See Johnston*, 133 N.H. at 89, 574 A.2d at 940.

The fourth instruction that the plaintiff alleges the trial court erred in denying provided as follows:

> "The owner's responsibility in a situation such as this is to take whatever precautions are reasonably necessary under the circumstances to reduce the likelihood of injuries from defects in her property. It is appropriate that the landlord who will retain ownership of the premises and any permanent improvements should bear the cost of repairs necessary to make the premises safe."

Contrary to the plaintiff's contention, the trial court did not entirely deny this requested instruction. Indeed, the trial court gave the jury the first sentence of this requested instruction almost verbatim: "A landlord should take whatever precautions are reasonably necessary under the circumstances to reduce the likelihood of injuries from defects in her property". Although the court denied the second sentence, which quotes directly from *Kline v. Burns*, 111 N.H. 87, 92, 276 A.2d 248, 251 (1971), this part of the instruction, like the case from which it was taken, dealt with the implied warranty of habitability which is not at issue in this case. The trial court is not obligated to adopt the identical wording of a party's requested instruction. *See Johnston*, 133 N.H. at 89, 574 A.2d at 940. Because the trial court had no obligation to give an instruction on the implied warranty of habitability, we hold that the trial court did not err in partially denying this requested instruction.

The fifth instruction that the plaintiff alleges the trial court erred in denying provided:

> "In the present situation you may properly consider the activity being carried on (rental of residential property) by the Defendant and the foreseeability of children being injured

in determining whether the Defendant acted as a reasonably prudent person in the operation of her property."

■ The plaintiff argues that this instruction would provide guidance to the jury in evaluating the concept of foreseeability, especially with regard to children. Under the circumstances of this case, however, the foreseeability of the presence of children did not alter the defendant's duty to use reasonable care in the maintenance of the rental property and to comply with RSA chapter 153. The record indicates that the court properly instructed the jury on the landlord's duty to maintain the premises. *See Johnston,* 133 N.H. at 89, 574 A.2d at 940.

The sixth instruction that the plaintiff alleges the trial court erred in denying provided:

"If you found Ida Watts violated a statue [*sic*] and this violation was causal of Brian's injuries and death, then you *must* render a verdict in favor of Brian since there is no evidence of comparative negligence against Brian."

■ With this instruction, the defendant sought a directed verdict in favor of Brian DeFrancesco on the issue of comparative negligence. The jury, however, returned a special verdict finding that the defendant was not negligent with regard to Brian. This finding disposed of his claim against the defendant and made the issue of his comparative negligence irrelevant. Thus, the absence of this instruction could not have misled the jury. *See Bernier,* 121 N.H. at 218, 427 A.2d at 515.

■ The seventh and final instruction that the plaintiff alleges the trial court erred in denying provided: "Property must be rented in a safe and habitable condition, conforming to the applicable statutes, regardless of whether it is rented at a reduced rate." Again, the trial court gave this instruction to the jury, with only a slight and immaterial variation in the requested language: "Property must be rented in a safe and habitable condition, conforming to the applicable statutes, regardless of *the terms of rent.*" Only the italicized portion of the court's instruction differs from what the plaintiff requested. Therefore, the trial court did not commit error in giving its instruction. *See Johnston,* 133 N.H. at 89, 574 A.2d at 940.

## IV. *Closing Argument*

The plaintiff next contends that defendant's counsel improperly injected his personal opinion into the defendant's closing argument.

We must first, however, address the procedural question of whether the plaintiff preserved this issue for our review by making a timely objection at trial. Recently, in *State v. Guay*, 130 N.H. 413, 543 A.2d 910 (1988), this court considered the appropriate time for a criminal defendant to object to alleged error in the prosecutor's opening statement. In *Guay*, the prosecutor for the State allegedly failed to address all elements of the crime in the opening statement. The defendant, however, did not object to the prosecutor's alleged omission during or after the prosecution's opening. The defendant finally entered an objection after a luncheon recess which followed the defendant's own opening statement. We held that the defendant's objection was not timely, and that "a defendant's objection to an allegedly deficient opening statement . . . should be made immediately after the State's opening, not after the defendant's opening." *Id.* at 419, 543 A.2d at 914.

This timeliness requirement is equally applicable to objections to improper statements in closing arguments in civil cases. With regard to closing arguments in a civil case, we stated that "an objection should be taken at the time the alleged improper statement is made, or within a reasonable time thereafter . . . ." *Bond v. Bean*, 72 N.H. 444, 447, 57 A. 340, 341 (1904). We have also stated that an

> "objection to incompetent evidence of counsel in argument should be taken as to other incompetent evidence—when it is offered. . . . An immediate correction of the error may save the trial. At no time can such correction be made with greater probability of removing the wrongful effect than at the time of the utterance. For counsel, conscious of error, to be permitted to sit by without making objection until there is less probability the wrong can be cured, would be to turn a rule of justice and fairness into a mere trap."

*Story v. Railroad*, 70 N.H. 364, 379, 48 A. 288, 294 (1900). We conclude that in a civil case, a party's objection to an opposing counsel's opening statement or closing argument must be made during or immediately after such opening or closing.

The record reveals that plaintiff's counsel did not enter an objection to defense counsel's alleged use of personal opinion either during or immediately after the defendant's closing argument. Nor did plaintiff's counsel make an objection after presenting his own closing argument. After the plaintiff's closing, the court recessed for approximately fifteen minutes, and after returning, the court in-

structed the jury. Not until after the judge finished instructing the jury did plaintiff's counsel bring his objection to the attention of the court. Accordingly, we hold that the plaintiff failed to make a timely objection to defense counsel's alleged use of personal opinion in his closing argument.

## V. *Submission of a Statute as an Exhibit to the Jury*

The plaintiff contends that the trial court erred in refusing to allow the jury to take a copy of RSA 153:10-a into the jury room. During their deliberations, the jury delivered questions to the court on two separate occasions asking for further instruction. On the first occasion, the court drafted and delivered a response to the jury to which the parties both agreed. On the second occasion, the jury specifically asked for the two parts of the law that were reviewed in court. At that time, the plaintiff requested that the jury receive copies of the applicable statutes. The court denied this request, and instead proposed to instruct the jury that they were to use their best recollection of the law as provided by the court. The court's proposed response, however, was never delivered because the jury reached a verdict before it could be delivered to them. The record further reveals that in response to specific questioning, the jury informed the court that they were able to reach a unanimous verdict despite the fact that they had not received a response to their request for the statutes. Thus, the plaintiff cannot claim that the jury was prejudiced or misled by not being given a copy of a statute that the jury said they did not need.

## VI. *Plaintiff's Failure to Preserve Issues for Appeal*

We now turn to several issues that were raised after the conclusion of the trial which were not objected to during trial. Generally, a party should make an objection to evidence at the time it is offered, or at the earliest opportunity after the reason for objection becomes apparent. *Guay*, 130 N.H. at 418, 543 A.2d at 914. Moreover, our rules of evidence require that parties make contemporaneous objections to the admission or exclusion of evidence at trial. N.H. R. Ev. 103(b)(1).

In the notice of appeal plaintiff's counsel certified that "every issue specifically raised has been presented to the Court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading." Despite the certification in the notice of appeal, the record clearly reveals that several issues raised on appeal were not preserved for our review.

On appeal, the plaintiff contends that counsel for the defendant asked improper questions during cross-examination of two of the plaintiff's witnesses. At trial, however, the plaintiff failed to enter an objection, timely or otherwise, to any of these questions. The first mention of the plaintiff's objection to these questions arose in the plaintiff's post-trial motions. Accordingly, we hold that because the plaintiff failed to object he has not preserved this issue for our review.

■ The plaintiff also sets forth several statements which were included in the trial court's jury charge that he claims were erroneous and misleading to the jury. The Superior Court Rules mandate that all "objections to the charge shall be considered as waived unless taken on the record before the jury retires." SUPER. CT. R. 72. "The process of stating objections to the charge is not a mere predicate for a later appeal; the object is to advise the trial judge of a claim of error that can be addressed before any damage is beyond correction in the trial court." *Daigle v. City of Portsmouth*, 129 N.H. 561, 583, 534 A.2d 689, 701 (1987). Immediately after the trial judge instructed the jury, a discussion was held on the record at the bench involving the judge and counsel for the plaintiff and defendant. The following exchange took place:

> "The Court: It is my understanding, other than a request for a specific instruction that the jury should disregard the opinion by defendant's counsel, that no further additional instructions have been requested by either party, other than what was already in the record. Is that correct, Mr. Craig?
>
> Mr. Craig: Correct.
>
> Mr. Yakovakis: That's correct, Your Honor."

In an affidavit filed subsequent to oral argument, plaintiff's counsel attested that the phrase "other than what was already in the record" referred back to a conference in chambers between the parties and the court. Plaintiff's counsel contends that this reference was sufficient to preserve his objection to the jury charge. At this conference, the court reviewed the plaintiff's submitted requests for jury instructions. Thus, the court's reference to "what was already in the record" can only be construed as relating to the plaintiff's contention that the trial court erred in denying requested jury instructions, an

issue that we have already addressed above. We conclude that neither in this exchange, nor in any subsequent exchange with the court before the jury retired to deliberate on their verdict, did the plaintiff ever object to the substance of the court's jury charge.

The first time that the plaintiff raised the issue of the adequacy of the jury charge was in post-trial motions. If an objection is first raised in a post-trial motion that is filed several days after the conclusion of the trial, the objection is not timely regardless of whether it is well founded. *See Mailhot v. C & R. Construction Co.*, 128 N.H. 323, 325, 514 A.2d 1255, 1257 (1986) (*per curiam*) (objection to jury instructions raised for first time in motion for new trial not timely). Therefore, we hold that the plaintiff failed to make a timely objection, and we will not inquire into the merits of the plaintiff's argument.

Finally, we address several issues that the plaintiff's counsel raised for the first time in his brief. In his brief, the plaintiff contends that during closing argument defendant's counsel: made improper remarks intending to arouse the passion and partiality of the jury; made improper insinuations regarding the integrity of plaintiff's counsel; and misstated the facts when summing up the evidence. At no time during the trial did the plaintiff ever object to any of these alleged transgressions. Nor did the plaintiff raise any of these issues in his post-trial motions or in his notice of appeal. These issues are not properly raised, and we will not consider their merit.

*Affirmed.*

All concurred.