# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0038, <u>Aaron Wedgwood v. HCA Health Services of New Hampshire, Inc.</u>, the court on September 30, 2019, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The defendant, HCA Health Services of New Hampshire, Inc. d/b/a Parkland Medical Center, appeals a jury verdict of $400,000 in favor of the plaintiff, Aaron Wedgwood.  On appeal, the defendant challenges pretrial rulings of the Superior Court (<u>Anderson</u>, J.): (1) denying its motion <u>in</u> <u>limine</u> seeking to preclude the plaintiff's expert from testifying that the plaintiff had suffered a mental nerve injury; and (2) denying its motion to strike a supplemental expert disclosure in which the plaintiff had disclosed that his expert would testify that his mental nerve injury was causally related to a fall on the defendant's premises, that the mental nerve injury is consistent with trauma he experienced as a result of the fall, and that numbness in the plaintiff's face is a permanent injury.  The defendant argues that, by denying these motions, the trial court impermissibly allowed the plaintiff's expert to offer opinion testimony as to "probable neurological injuries at trial."  The defendant further argues that the Trial Court (<u>Messer</u>, J.) erred by not issuing a corrective jury instruction or granting a new trial on the basis of allegedly prejudicial statements that the plaintiff's counsel made during closing arguments, and by utilizing a special verdict form which, it claims, misled the jury when considering, for purposes of comparative fault, whether the plaintiff's conduct was a substantial factor in causing his own injuries.

We first address whether the trial court erred by allowing the plaintiff to offer expert opinion testimony as to whether he suffered a mental nerve injury as a result of the defendant's negligence.  The trial court has broad discretion over the management of discovery and the admissibility of evidence at trial.  <u>Laramie v. Stone</u>, 160 N.H. 419, 425 (2010); <u>Figlioli v. R.J. Moreau Cos.</u>, 151 N.H. 618, 626 (2005).  We review the trial court's decisions on such matters pursuant to the unsustainable exercise of discretion standard.  <u>Figlioli</u>, 151 N.H. at 626.  To satisfy this standard, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of its case.  <u>Id</u>.

"We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information." Id. Thus, a party is generally entitled to disclosure of an opposing party's expert witnesses, the substance of the facts and opinions about which the experts are expected to testify, and the basis for their opinions. Id. Failure to provide such information in accordance with a court-ordered discovery schedule should, ordinarily, result in the exclusion of expert opinion testimony at trial absent a showing of good cause. Id.; Super. Ct. R. 1(d). The good cause standard "does not explicitly bar relief from all consequences of human neglect." Perron v. Aranosian, 128 N.H. 92, 95 (1986).

In this case, the plaintiff claimed that in May 2015, while he was being treated at the defendant's emergency room, he lost consciousness and fell as a result of the negligence of a nurse employed by the defendant, thereby suffering several injuries to his face. The parties waived the requirements of RSA 516:29-b (Supp. 2018), and in accordance with the trial court's case structuring order, the plaintiff timely disclosed a physician who would opine that, to a reasonable degree of medical certainty, he suffered, among other injuries, permanent jaw pain and permanent "decreased sensation along the chin and lower lip." The defendant, in turn, disclosed a physician who would testify that the plaintiff's "complaints of pain in his face and numbness to his chin" indicate that he suffered "a contusion/bruise to the mental nerve which effects sensation to the chin and face," that "[a] nerve contusion is the least severe of potential nerve injuries," and that "[t]o the extent there was a mental nerve bruise as a result of [the] fall, it was minor, transient, and its symptoms should have resolved by the fall of 2015."

During the discovery deposition of the plaintiff's expert, he testified that the plaintiff's "decreased sensation and jaw pain . . . could potentially be related to a nerve injury," that a "bruised nerve" could create a permanent nerve injury, and that the plaintiff's jaw pain and loss of sensation were permanent injuries. He further testified that "the injury to the mental nerve" was "consistent with the mechanism of injury" described by the plaintiff and reflected in the plaintiff's medical records. Following the close of discovery, and approximately one month prior to trial, the plaintiff provided a supplemental expert disclosure, stating, among other things, that his medical expert was "expected to opine that plaintiff's injuries, which include the . . . mental nerve injury are causally related to the" fall that the plaintiff sustained in the defendant's emergency room, and that "since the numbness complaints have persisted in excess of two years[,] . . . the facial numbness is more likely than not permanent." At that point, trial testimony of the plaintiff's medical expert was scheduled to be taken by deposition in three days.

Following the supplemental disclosure, the defendant moved to exclude testimony concerning a nerve injury on the basis that the plaintiff had not timely disclosed that his expert would testify concerning a nerve injury, and

moved to strike the supplemental disclosure on the same basis. The plaintiff objected, observing that he had timely disclosed that his expert would testify that he had experienced permanent jaw pain and decreased sensation along the chin and lower lip, and that the expert had testified during his deposition that those symptoms were consistent with an injury to the plaintiff's mental nerve. The trial court denied the motions, reasoning that the opinions were previously disclosed, either during the expert's discovery deposition or in the prior disclosure, and that, when the trial court offered the defendant a continuance to address the alleged inadequacy of the plaintiff's disclosures, the defendant had declined the offer and, thus, "to the limited extent that the supplement[al] disclosure was truly a new disclosure," the defendant could not "show meaningful prejudice."

Upon this record, we cannot say that the trial court's decision to allow the plaintiff's expert to testify concerning "probable neurological injuries" was clearly untenable or unreasonable to the prejudice of the defendant's case. Figlioli, 151 N.H. at 626. The plaintiff timely disclosed that his expert would testify that he had suffered permanent jaw pain and loss of sensation along the chin and lower lip as a result of the defendant's negligence. Although the disclosure did not attribute those injuries to nerve damage, the defendant's own disclosure did attribute the injuries to a bruised mental nerve, but claimed that the injuries were not permanent. During his discovery deposition, the plaintiff's expert testified that a bruised nerve can, in fact, cause permanent injury, that the plaintiff's loss of sensation and jaw pain were permanent, and that the "mechanism of injury" described by the plaintiff and reflected in his medical records was consistent with "the injury to the mental nerve." Accordingly, the trial court reasonably could have determined that the plaintiff had sufficiently disclosed, well in advance of the close of discovery, that his expert would testify that he had suffered permanent jaw pain and loss of sensation consistent with an injury to his mental nerve, and that the defendant would be neither surprised nor prejudiced by such testimony.

We next address whether the trial court erred by not issuing a corrective jury instruction or granting a new trial on the basis of allegedly prejudicial statements of the plaintiff's counsel during his closing argument. The plaintiff's attorney began his closing argument by asserting that "[a] trial should be a search for the truth," and that it is "not about how many people can sit at counsel's table," "how many screens you can put up," "how many expert witnesses you can pay for," or "how you can take facts and twist them and manipulate them to try to fit your theory." The plaintiff's counsel then offered the following retort to the assertion of the defendant in its closing argument that it is "in the business of helping people": "Until you accuse [the defendant] of doing something wrong. Because for the last three years [the defendant] has been in the business of using every weapon in [its] arsenal to avoid taking responsibility for the carelessness" of its nurse. At that point, the defendant objected, but did not specify any basis for the objection, request a

side bar conference to explain its objection, or request any kind of curative instruction.  The trial court overruled the objection.

During the remainder of a closing argument spanning more than twenty pages of the transcript, the plaintiff's counsel referred to the plaintiff once as "a simple guy" who is "an HVAC repairman," twice referred to the defendant's experts as "hired guns," and once referred to one of the defendant's experts as someone who was "bought and paid for."  As to the last comment, the plaintiff's counsel continued, "If you have enough money, you can hire and pay someone to say anything.  Remember, Big Tobacco, and you had all these doctors testifying [that] . . . smoking is not related to cancer.  Yeah, right.  He would say anything."  At no point during the remainder of the plaintiff's closing argument, however, did the defendant raise any objection, general or specific.  Nor did the defendant object to any portion of the closing argument after the plaintiff's counsel had concluded, or request any curative instruction.

Following trial, the defendant filed post-trial motions to set aside the verdict and for a remittitur, arguing for the first time that by highlighting the economic disparity between the plaintiff and defendant, the plaintiff's counsel had unfairly prejudiced the jury, and that because the trial court had not issued corrective jury instructions, a new trial was required.  The trial court denied the motions, observing that it had instructed the jury that the arguments of trial counsel are not evidence, and that it was obligated to decide the case upon the facts and the law without sympathy or prejudice for or against any party.  The trial court specifically found that the statements of the plaintiff's counsel were not prejudicial "such that they resulted in an excessive award based on sympathy toward Plaintiff or malice toward Defendant."

On appeal, the defendant argues that "reversal is required because [the plaintiff's] counsel blatantly and intentionally invited the jury to consider, in coming to their verdict, their sympathies, passions, and prejudices by emphasizing [the defendant's] 'economic condition or status,'" and that "the trial court unsustainably exercised its discretion in not issuing a curative instruction and/or not ordering a new trial."  We disagree.

"It is well established that a party must make a specific and contemporaneous objection during trial to preserve an issue for appellate review.  This requirement affords the trial court an opportunity to correct any error it may have made and is grounded in common sense and judicial economy."  Broughton v. Proulx, 152 N.H. 549, 552 (2005).  With respect to a closing argument in a civil jury trial, any objection must be raised either during or immediately after the closing argument.  Broderick v. Watts, 136 N.H. 153, 167 (1992).  Moreover, an objection stating only that an argument of counsel is improper is not sufficiently specific to preserve a subsequent challenge to the precise nature of the claimed impropriety.  Broughton, 152 N.H. at 552.

4

In this case, the defendant raised only a single objection during the plaintiff's closing argument to a statement that the defendant had used "every weapon [in] its arsenal to avoid taking responsibility for [its] carelessness." Beyond uttering the word, "[o]bjection," however, the defendant did not articulate any basis for the objection. Thus, the objection did not satisfy the specificity required to preserve an objection to a closing argument. See id. (holding that an objection in which counsel asserted that an opening statement was not "a proper opening statement" was not sufficiently specific to preserve an argument that the opening statement improperly invited the jury to consider the economic disparity between the parties). Although the defendant may have articulated the basis for its objection in its post-trial motions, objections raised in post-trial motions are made neither during nor immediately after the closing argument and, thus, are not contemporaneous. Broderick, 136 N.H. at 167-68 (holding that objection to closing argument raised after the trial court finished instructing the jury was not timely raised); see also id. at 169-70 (holding that an objection to the adequacy of a jury charge raised for the first time in post-trial motions was not timely).

We decline the defendant's invitation either to reverse on the basis that the trial court's alleged error in failing to provide a curative instruction was a plain error affecting the defendant's substantial rights, see Sup. Ct. R. 16-A, or to suspend our preservation requirement in this case. The plain error rule "should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Stachulski v. Apple New England, LLC. 171 N.H. 158, 171 (2018) (quotation omitted). To amount to plain error, there must be error, the error must be plain, the error must affect substantial rights, and the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. To establish that the alleged error in this case affected the defendant's substantial rights, the defendant must demonstrate that it was prejudicial, that is, that it affected the outcome of the proceeding. State v. Thomas, 168 N.H. 589, 606 (2016).

It is appropriate to challenge the credibility of an opposing party's expert witnesses in a closing argument. See Stachulski, 171 N.H. at 172. Moreover, as the trial court observed, it specifically instructed the jury that the arguments of counsel are not evidence, and that its responsibility was to decide the facts "without sympathy, prejudice, fear, or favor for or against any party," and not "on the basis of anything said by counsel not supported by the evidence." Under the circumstances of this case, we cannot say that the trial court's failure to interrupt the plaintiff's closing and provide additional instructions not requested by the defendant in order to address a handful of isolated comments, all but one of which were not objected to, amounted to a plain error that affected the defendant's substantial rights. See Stachulski, 171 N.H. at 172; State v. Fiske, 170 N.H. 279, 291 (2017). For the same reason, we see no reason to suspend the preservation requirement.

Finally, we address whether the trial court erred by using a special verdict form that, the defendant claims, misled the jury. The special verdict form directed the jury to consider whether the plaintiff "was comparatively at fault by failing to exercise care?" If the jury answered "yes" to that question, the form directed it to consider whether the plaintiff's failure to exercise care "was a substantial factor in bringing about his injury?" If the jury answered "yes" to that question, the form directed the jury to determine the percentage of fault attributable to each party.

At trial, the defendant objected to the question directing the jury to consider whether the plaintiff's failure to exercise care was a substantial factor in bringing about his injury on the basis that that question "isn't included in the standard instructions." The defendant noted that, with respect to the questions on the special verdict form addressing its negligence, the trial court had adopted its proposed deviation from the model special verdict form by having the jury consider its legal fault in two questions — one asking whether it breached a standard of care, and the other asking whether the breach was a substantial factor in causing the plaintiff harm — only because, it contended, a "two-step process" was "mandated by . . . statute." By contrast, the defendant argued that there was no similar statutory requirement for comparative fault. Thus, the defendant "request[ed] that the comparative fault verdict form [be] consistent with the" model special verdict form, which would have had the jury consider, in one question, whether the plaintiff was legally at fault to any degree. The trial court overruled the objection, observing that both parties had agreed to have it give the standard jury instruction on comparative fault, "which includes the statement that the Defendant must prove that the Plaintiff failed to exercise care and that such failure was a substantial factor in bringing about his injury." The defendant raised no other objection to the special verdict form at trial.

The jury ultimately answered "yes" to the question asking whether the plaintiff "was comparatively at fault by failing to exercise care," but "no" to the question concerning whether his "failure to exercise care was a substantial factor in bringing about his injury." Thus, the jury did not apportion fault between the parties.

In its post-trial motion to set the verdict aside, the defendant argued for the first time that the special verdict questions on comparative fault were confusing because the first question asked the jury to consider whether the plaintiff was "at fault," a concept that "subsume[s] the question of legal cause," while the second question directed the jury to consider whether the plaintiff's conduct "was a substantial factor in bringing about his injury," a question that also addressed legal causation. Thus, the defendant argued that the special verdict form "effectively ask[ed] twice whether the Plaintiff's conduct was a 'substantial factor.'" In denying the motion, the trial court reasoned that, contrary to the defendant's argument, the two questions specifically directed

6

the jury to consider whether the plaintiff failed to exercise care, and whether such failure was a substantial factor in bringing about his injury, and that those questions were consistent with the trial court's jury instruction on comparative fault, to which the defendant had not objected.

On appeal, the defendant raises the same argument that it raised in its motion to set aside the verdict. We conclude that the argument is not preserved because the defendant raised it for the first time in a post-trial motion. See Broderick, 136 N.H. at 170. To the extent the defendant contends that the special verdict form amounted to a plain error affecting its substantial rights, we agree with the trial court that the form did not "effectively" ask the jury to consider whether the plaintiff was a substantial factor in bringing about his injuries twice. Rather, the form directed the jury to consider in one question whether the plaintiff "was comparatively at fault by failing to exercise care," and in a second question, whether the "failure to exercise care was a substantial factor in bringing about his injury." Moreover, as the trial court observed, these questions were consistent with the trial court's instruction on comparative fault. Accordingly, there was no error, plain or otherwise, and for the same reason, we decline the defendant's invitation to suspend the preservation requirement with respect to this issue.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.


**Eileen Fox,**
**Clerk**

7